ADVANCE THRESHER COMPANY, APPELLANT, v. EUGENE C. KENDRICK ET AL., APPELLEES.

FILED JUNE 12, 1912. No. 16,941.

Appeal: AFFIRMANCE. "Where the conclusion reached by the jury was the only one permissible under the pleadings and evidence, the judgment will be affirmed. In such case, errors occurring at the trial could not have been prejudicial." *Vernon v. Union Life Ins. Co.*, 58 Neb. 494.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Albert W. Crites,* for appellant.

*Justin H. Porter,* contra.

FAWCETT, J.

From a judgment of the district court for Dawes county, upon a verdict of the jury in favor of defendants, plaintiff appeals.

Plaintiff's abstract states that the petition is based upon seven causes of action, six of which are upon promissory notes, dated March 14, 1908, the last of which matured, upon its face, December 1, 1910, that said notes aggregate $2,460; that the seventh cause of action is upon an account for goods sold by plaintiff to defendants, aggregating $40.11; that the petition prayed judgment against defendants for $3,520.11, with interest from March 14, 1908; that all of these notes were secured by chattel mortgage on one steam traction engine and attachments, which mortgage provided for accelerating the ma-

turity of the remaining notes in case any of them should not be paid at maturity; that the notes set forth in the first and second causes of action were matured on their face when the petition was filed; and alleges the maturity of the remaining notes under the clause in the chattel mortgage providing for accelerating maturity.

The answer is quite voluminous. Among other things, it alleges, in substance, that the engine was not as represented; that it would not do the work; that, when notified, plaintiff furnished an expert engineer of its own to set the engine to work and to instruct defendants in its use; that the engine would not develop half its rated horse-power; that it was not well made or of good material and workmanship, and was inferior to traction plow engines of much smaller size, manufactured by other concerns; that the trial of the engine lasted over six weeks and was conducted by experts and other agents and employees of plaintiff, with the assistance of defendants, but that the engine would not do the work; that the parts constantly broke and wore out, "and said experts ordered new ones without authority of defendants;" that defendants paid the freight in the amount of $261.63 and were put to other expenses, which, with the item for freight, aggregated $848.37, for which, by way of cross-petition, they demanded judgment. In appellees' "additional abstract" it is shown that the answer further alleged that, the representations of plaintiff and its agents having proven false and the warranty having wholly failed, and the engine having never been accepted by defendants, but having remained with them and plaintiff's agents during the trial and testing thereof and the engine being wholly unsuitable and unfit and incapable of being used as a traction plow engine of sufficient traction power to plow or pull the plows referred to in the answer, or to develop the draft power rated, or to otherwise do the work as represented and warranted by plaintiff, and being of poor workmanship and material and continually breaking down and wearing out in parts and

wholly worthless to defendants as a plow draft engine, they returned said engine and all parts, including those items enumerated in plaintiff's seventh cause of action, to plaintiff at Marsland, and plaintiff received and took the same and converted it to its own use. The reply, as set out in plaintiff's abstract, admits that the notes were given for the entire purchase price of the engine, but denies every other allegation in the answer, and sets forth the warranties as contained in the written order for the engine given by defendants.

In its brief plaintiff states: "Default was made in the payment of the first two notes, and appellant exercised its option to accelerate maturity of the remaining notes, took possession of the machine under its chattel mortgage, advertised and sold it, and brought this action to recover the deficiency of the debt." The trouble with this statement is that it finds no support in either the pleadings or the evidence. There is no reference whatever in the pleadings as to any possession taken or sale made of the engine under the chattel mortgage. The mortgage is not even set out in the abstract. The only evidence in relation to any proceedings under it is the testimony of Mr. Redinbaugh, who acted for plaintiff in the sale of the engine to defendants, and who resold it after it had been returned by defendants to the railroad track at Marsland, as follows: "I sold it to Harry Pierce under the chattel mortgage." When Mr. Pierce was introduced as a witness, by plaintiff, he testified that he bought the engine from Redinbaugh; that he first saw it at Marsland; next on a flat car at Hemingford, from which it was unloaded and taken to his ranch; that the next morning "we went to plowing with it; we hitched on four plows in each gang, went out to a rather rolling piece of ground, put the plows in and went ahead; there were two gangs of 14-inch Parlin & Orendorf plows; they were mould board plows; there were some boxings that needed tightening up, but otherwise the engine pulled the plows to my satisfaction; I bought the engine after that test the

same day." It appears, therefore, that defendants, being dissatisfied with the engine, returned it to the point where they had received it, and that subsequently plaintiff took possession of and resold it. No evidence was offered to show the value of the machine at the time it was returned. The presumption, therefore, is conclusive that it was of the same value as when received by defendants.

A very vigorous argument is presented by plaintiff, assailing the rulings of the court in permitting defendants to prove representations made by the agent Redinbaugh at the time he made the sale and received from defendants their written contract and the notes set out therein, and upon the further point that, defendants having failed to show written notice to the company at Battle Creek, Michigan, and to its agent who sold the engine, at the time they returned it, the return of the engine was ineffectual to release defendants from their liability upon their notes, and that plaintiff was entitled to an instruction directing the jury to return a verdict in favor of the plaintiff for such amount as the jury might find to be due under the contract. Certain instructions, given by the court, and the refusal of the court to give certain instructions requested by plaintiff are also assailed. We deem it unnecessary to consider any of these questions, for the reason that the verdict returned by the jury was the only verdict which, under the pleadings and the evidence, could be sustained. The fact that plaintiff took possession of the engine and sold it at private sale to another party, thereby converting it to its own use, and offered no evidence to show that the engine was not in as good condition and worth just as much when it was returned by the defendants as when it was delivered to them, renders all of the above contentions immaterial.

AFFIRMED.