JOHN PLEINIS, as Administrator, Appellant v. WILSON STORAGE AND TRANSFER COMPANY et al., Respondents

(66 N. W.2d 68)

(File No. 9442.  Opinion filed September 30, 1954)

Rehearing denied November 17, 1954

**W. M. Potts,** Mo'bridge, **R. W. Tschetter,** McLaughlin, for Appellant.

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendants and Respondents.

RUDOLPH, J. Jacob E. Schlaht, Jr., was killed when his car collided with the rear of a truck owned by the defendant, Wilson Storage and Transfer Company, and operated by defendant, Walter Klingman. This is an action for wrongful death brought under the provisions of SDC Supp. 37.2201 and 37.2203. The trial court directed a verdict in favor of defendants and plaintiff has appealed.

The accident occurred on Highway 12 west of Mobridge. Klingman was driving a tractor-trailer truck with an overall length of forty-five feet. This tractor-trailer unit was equipped with headlights and rear lights. The lights on the rear of the trailer were two cluster lights on top, the tail

light, two lights on each corner "and then over the side of each corner, to the rear, we have another light". There were two reflectors on the rear of the trailer. The front lights consisted of the head lights, five clearance lights over the cab of the tractor and parking lights. The lights were on at the time of the collision. Highway 12 is black top, with the hard surface about 24 feet wide. This highway runs west from Mobridge about a mile and one-half, then makes a general curve to the south. East of the curve about 300 feet there is a point in the highway about 20 feet higher than the highway south of the curve which is straight and level. The collision took place at a point about 900 feet south of the curve.

■ Klingman left Mobridge about 2 o'clock in the morning with 10 or 12 tons of freight in the trailer. When he reached this point about 900 feet south of the curve some horses came out of the ditch beside the road and he struck one. The horse was on the highway directly in front of his truck after it stopped. Within minutes after striking this horse the defendant Tommy Mauck, came from the south and stopped his car at the scene. The truck was stopped in the west traffic lane. Mauck stopped about 20 feet ahead of the truck. Mauck was a policeman in Mobridge and in uniform. Shortly after arriving Mauck left to return a Mr. Helmey who was thought to be the owner of the horse. Klingman remained to flag traffic which he did with the use of a flash light. While Mauck was gone two cars passed from the south and one from the north. When Mauck returned with Mr. Helmey he left his car in the east lane of traffic. There is some dispute in the evidence as to just where this car was stopped with reference to the truck. Klingman testified it was about 30 feet ahead of the truck and Helmey testified that the car was stopped so the door of the truck cab and the front door of the car were about even. In any event the car with its lights on was stopped in the east traffic lane near the truck. The three men went to look at the horse and while they were standing there a car was seen approaching over the hill from the east. Mauck took his flash light and ran to the north back of the truck. Shortly thereafter the car struck the rear of the trailer with terrific force.

Mauck was seen about 75 feet to the rear or north of the trailer running back toward the trailer with the flash light burning. No flares were placed in the highway after the truck stopped and before the accident. The car struck the rear of the trailer with such force that the front half of the car was driven under the trailer and completely demolished. Schlaht was killed instantly. The car was wedged so tightly under the trailer that the wrecker called from Mobridge could not remove it. There were no marks on the paving showing that the brakes of the car were applied. The physical facts disclose without question that the car was going at a high rate of speed when it hit the truck.

Mr. Helmey testified the lights on the rear of the truck were dim, but he also testified he could see these lights from the curve which he estimated was 900 feet away. A Mr. Johnson who arrived at the scene shortly after the accident testified that the rear lights were "muddy" and that he had difficulty seeing them when 75 feet away, but at that time there was a car in the ditch on the west side of the trailer headed northeast with its lights burning.

■ We are again confronted with the application of our Comparative Negligence Law, SDC Supp. 47.0304-1. That the deceased was negligent there can be no doubt. King v. Farmers Educational and Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333; Winburn v. Vander Vorst, 75 S.D. 111, 59 N.W.2d 819. The physical facts disclosing the negligence of the decedent, the presumption that he was in the exercise of ordinary care disappears. McKiver v. Theo. Hamm Brewing Co., 67 S.D. 613, 297 N.W 445. The question presented is whether under the recited facts a jury might reasonably find that "the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison".

■ Appellant principally relies upon our decision in the case of Winburn v. Vander Vorst, supra. However, in the application of this statute it must always be remembered that due to legislative injunction we are dealing with a degree of negligence which submits to no definite rule. Throughout the years neither man, court nor legislature has

been able to furnish any yardstick or rule whereby negligence can be measured or degree determined. The result must always depend upon the circumstances of the particular case and nothing else.

The facts in this case and those in Winburn v. Vander Vorst are similar in that in each case the driver of a car collided with a truck stopped on the highway after dark. At this point similarity between the two cases ceases. In the Winburn case there were no lights or reflectors on the truck. The facts in this case disclose there were reflectors on the rear of the truck and all lights were on. In this case there was an attempt made to stop deceased by signaling with a flash light. No such attempt was made in the Winburn case. In the Winburn case the plaintiff did see the truck, and after realizing it was not moving, made every effort to avoid striking it. In this case the evidence fails to disclose that deceased saw the truck at any point, or that he ever slackened his speed or applied his brakes. He simply struck the truck "full steam ahead".

▆▆ Granting that the vison of deceased was made difficult by the lights of the Mauck car such condition would call for some diminution of speed or care on the part of the deceased, and record affirmatively shows neither diminution of speed nor application of brakes. It is apparent from the recited facts that if the lights of the Mauck car interfered with deceased's vision such interference must have existed for a space of time which would have permitted some action on the part of the deceased. To drive blindly on at the rate of speed deceased was traveling as disclosed by the physical facts, seems to us to be negligence which must be classified as something more than "slight".

▆▆ Should it be conceded that a jury might reasonably find that decedent's negligence was not more than slight, then it seems clear to us that it would not be reasonable to find that the defendants' negligence was gross in comparison. True, defendants were negligent in not placing flares as required by SDC 44.0354, and in parking the car along the side of the truck. But the truck lights which were several were left lighted and acknowledging they were "dim"

or "muddy" they could be seen from a distance of 900 feet when not looking against other lights, and for 75 feet when looking against the lights of the car in the ditch. Most important, however, is the fact that defendants were there flagging traffic. This fact would not absolve them from their negligence, but it is an important factor, we believe, when a comparison is made between the negligence of the parties. Taking these facts into consideration, and then comparing the negligence of the defendants with the negligence of deceased as it appears from the above statement it seems to us that the trial court properly directed the verdict.

The judgment is affirmed.

ROBERTS, SICKEL and LEEDOM, JJ., concur.

SMITH, P.J., concurs in result.