DWYER, Respondent v. CHRISTENSEN, Appellant

(75 N.W.2d 650)

(File No. 9532. Opinion filed March 21, 1956)

Rehearing denied May 9, 1956

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendant and Appellant.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, and **Donald J. Porter,** Chamberlain, for Plaintiff and Respondent.

RENTTO, J. This is an action for injury to plaintiff's person and property arising out of an automobile accident which plaintiff claims was occasioned by defendant's negligence. After both sides rested defendant moved for a directed verdict which was denied. The jury returned a verdict for plaintiff and judgment was entered thereon. Defendant's motions for judgment notwithstanding the verdict and for a new trial were denied. Defendant appeals from the judgment and the denial of his motion for a new trial.

In submitting the case the trial court instructed the jury concerning our comparative negligence law, Chapter 160, Laws of 1941, SDC Supp. 47.0304-1. Defendant claims that this act is inapplicable because plaintiff's negligence was more than slight and defendant's negligence was not gross in comparison. As additional grounds for reversal defendant urges: (1) That he was denied the right to exercise three peremptory challenges in the selection of the jury; (2) That the instruction given concerning the assured clear distance rule was insufficient; and (3) That the jury should not have been instructed concerning the sudden emergency rule.

On the night of November 28, 1952, defendant was driving his car, a dark green 1947 Plymouth Sedan, on highway 16 going west from Reliance, South Dakota. When he got to the place known as Lyman he decided to turn around and go back to Reliance. It was then about 9:00 p. m. The highway at the place material in this case is straight running about due east and west. It is fairly level with a slight dip about one-half or six-tenths of a mile east of Lyman. The surfacing of the highway is a strip of black top about twenty-two feet wide. It was dry and free of any loose material. The evening in question was cold, dark and windy but visibility was good. The filling station just south of the highway at Lyman was closed and unlighted. In turning his car around so as to head back east to Reliance he drove south across the highway into the filling station and because the ground was rutty he stopped his car at the entrance to the station. Rather than driving through the station and then onto the highway making a U turn, he decided to back onto the highway and head his car east by making a Y turn around on the highway. He was familiar with the fact that highway 16 was a busy highway. Before backing onto the highway he looked both ways, that is to the west and to the east. He saw the headlights of an approaching vehicle about three-fourths of a mile or a mile to the west and a mile or more to the east he saw lights reflected in the sky over the highway. The latter were the lights of plaintiff's car.

Defendant then backed his car onto the highway in a northwesterly direction. When he stopped backing, his rear wheels were past the north edge of the highway and a few feet down the slope, which was gentle, into the north ditch. His car was then pointing toward the southeast at an uphill angle with the right front fender about to the center line of the highway. As he put it into low gear to drive forward the engine ceased functioning. Despite repeated and contiuous attempts he was unable to get the engine started. During the time that this was taking place the vehicle from the west was approaching as was plaintiff's car from the east. The evidence as to the conduct of these parties just prior to the accident is contradictory. As bearing

on the negligence of defendant and contributory negligence of plaintiff we are required to accept that version of the disputed evidence which is most favorable to the plaintiff and indulge those reasonable inferences therefrom which are most favorable to him. Taecker v. Pickus, 58 S.D. 177, 235 N.W. 504.

The effect of that rule is to establish these as the facts concerning what occurred immediately before the accident: Plaintiff was proceeding west in his own lane which was the north lane of the highway. His headlights were clean and in good condition and were on high beam. His speed was from forty to forty-five miles per hour. His windshield was clean and his visibility good. When he was about one-half mile from the vehicle approaching from the west he dimmed his headlights by switching them to low beam and maintained his previous speed. He had seen the lights of this vehicle when they were a mile or a mile and one-half away. He was observing the road ahead but he didn't see defendant's car until "right after he came out of meeting the lights" of the vehicle approaching from the west. At that time he saw defendant's car standing broadside in the road about fifty to seventy-five feet ahead of him. It had no lights on and he didn't see it until his headlights which were on low beam revealed it. In meeting and passing the vehicle coming from the west plaintiff was momentarily "practically" blinded. He did not try to slacken his speed then but when he saw defendant's car he applied his brakes slightly and swerved his car into the south lane of the highway. He was able to avoid colliding with defendant's car but his car went off the south shoulder of the road and overturned as he attempted to get back on the highway, coming to rest on its top in the south lane. With his headlights on high beam he could see two hundred to two hundred fifty feet ahead and on low beam about half that distance. Plaintiff testified that his brakes were in good condition but that after he saw defendant's car he could not have stopped his car in time to avoid colliding with it if he had continued on in his own lane. It is obvious from his own testimony that plaintiff could not have stopped his car within the range of his lights on low beam even before he saw de-

fendant's car. Immediately after plaintiff's car overturned defendant was able to get his car started and drive it across the road to the filling station.

From this basis defendant proceeds to urge that plaintiff was guilty of negligence more than slight, as a matter of law, because he was outdriving his headlights. Plaintiff concedes his negligence in this regard but claims that his violation of the rule does not convict him of negligence more than slight as a matter of law. While our comparative negligence law provides that "all questions of negligence and contributory negligence shall be for the jury" it has been held that: "If, however, the facts are not in dispute or of such a nature that reasonable men could not differ, the standards of conduct are for the court to determine, and not for the jury." Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27, 29. If the evidence shows beyond reasonable dispute that the negligence of plaintiff is more than slight, the trial court must then instruct the jury to return a verdict for the defendant. Kundert v. B. F. Goodrich Co., 70 S.D. 464, 18 N.W.2d 786.

Whether plaintiff's negligence was slight or otherwise is not determined by comparing it with the negligence of the defendant. That determination under our rule is made by considering it separately from the negligence of the defendant. Creager v. Al's Construction Co., 75 S.D. 482, 68 N.W.2d 484. In a number of cases this court has found that the negligence of the plaintiff was more than slight and that a directed verdict for the defendant was justified. In others it has held that it was within the province of the jury to determine whether plaintiff's negligence was only slight and the defendant's gross by comparison. These cases however do not spell out any rule of thumb to be followed in applying our comparative negligence law. To the contrary, the nonexistence of such rule is made clear. In Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665, 667, it is written "* * * each case must be determined upon the facts presented. There is no exact rule or standard that can be fixed for its application." "The result seems to depend upon the composite judgment of the members of the court as to whether reasonable men might differ upon the question of whether

plaintiff's acts constitute negligence more than slight." The reason for this appears in Pleinis v. Wilson Storage & Transfer Co., 75 S.D. 397, 66 N.W.2d 68, 71. "However, in the application of this statute it must always be remembered that due to legislative injunction we are dealing with a degree of negligence which submits to no definite rule. Throughout the years neither man, court nor legislature has been able to furnish any yardstick or rule whereby negligence can be measured or degree determined. The result must always depend upon the circumstances of the particular case and nothing else."

 Just prior to the accident plaintiff was proceeding in his own lane of travel and at a lawful speed. His headlights furnished the illumination required by statute and he maintained a proper lookout ahead. In dimming his lights he was observing the law. While our statute does not specifically require a diminution of speed when proceeding with headlights temporarily on low beam, it may well be that such action is necessary to satisfy the standards of a reasonably prudent person. The lights of the vehicle from the west momentarily interfered with his view but we do not believe that such circumstance required him to stop. Winburn v. Vander Vorst, 75 S.D. 111, 59 N.W.2d 819. There is nothing in this record to warrant the belief that he could have stopped before reaching the place where defendant's car was, if he had attempted to stop when his vision was interfered with. After discovering defendant's car, he could not stop in time to avoid it. His negligence in this regard is conceded but that concession does not answer our question. Under our comparative negligence law the negligence of the plaintiff does not defeat recovery unless it is more than slight. In support of his contention that plaintiff's negligence was more than slight as a matter of law, defendant relies heavily on King v. Farmers' Educational and Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333. However, in that case the Court was concerned with determining whether conduct was negligent, not whether the negligence was slight or otherwise.

 Plaintiff had no reason to expect that defendant's car with no lights on would be stopped in his lane of

traffic. He had a right to assume the contrary. Until he came out of meeting the vehicle from the west the road ahead of him was apparently clear. Defendant's car was dark green in color with its left side toward plaintiff. The reflective surfaces, generally located in connection with the lights, at the front and rear of the car were out of the vision of plaintiff. The record does not show that there were any other colors or materials on the left side of the car that would be better reflectors of light than the dark green body of the car. It is reasonable to believe that the color and position of the car would tend to make it difficult to discern on a black top highway. This fact is of importance in determining whether plaintiff's negligence was slight or otherwise. If an object is so well camouflaged as not to be discernible within the range of a driver's vision he may not be held to the duty of seeing it. On the other hand a driver may not be excused for failing to see an object on the road ahead which because of lights or other devices is or should be readily apparent to him. These are the extremes of discernibleness. In between these extremes fall the cases in which it is impossible to say, as a matter of law, what the driver's duty of discernment is. In those instances the determination is for the jury. Under the circumstances here existing we cannot say as a matter of law that the plaintiff was guilty of more than slight negligence. Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N.W. 623; Pierson v. Jensen, 150 Neb. 86, 33 N.W.2d 462; Audiss v. Peter Kiewit & Sons Co., 8 Cir., 190 F.2d 238; Winburn v. Vander Vorst, supra. The question of whether plaintiff's negligence was slight or otherwise was for the jury to determine as was the question of whether defendant's negligence was great or gross in comparison thereto. Frager v. Tomlinson, 74 S.D. 607, 57 N.W.2d 618.

In the selection of a jury twelve prospective jurors were seated and passed for cause by both parties. The parties then began the exercise of their peremptory challenges. Beginning with plaintiff each party exercised alternately until it was defendant's opportunity to exercise his second. At that time defendant announced that he "waived as to the jury in the box". Plaintiff then exercised his third and

after that defendant exercised another challenge. The name of another juror was drawn from the box and this juror was passed for cause. Defendant then sought to challenge him peremptorily claiming that he had exercised only two of his three challenges. The Court denied his request.

■■ The right of peremptory challenge in civil actions is purely statutory. 50 C.J.S., Juries, § 280(b). SDC 33.1310 so far as here material provides: "Each party is entitled to three peremptory challenges. If no peremptory challenges are taken until the panel is full, they must be taken by the parties alternately, commencing with the plaintiff." After detailing the method of exercising peremptory challenges SDC 33.1312 goes on to require: "The parties shall proceed alternately, exercising their peremptory challenges until the same are exhausted and the jurors then remaining in the box shall be sworn as jurors to try the case." It is clear from this language the challenges must be exercised alternately. When a party is presented with an opportunity to challenge he must then either exercise or waive. He may not reserve the opportunity for subsequent use. When defendant "waived as to the jury in the box" he waived his second peremptory. When parties are required to challenge alternately a party who fails to challenge in the first instance loses one challenge each time that he fails to challenge in turn. 50 C.J.S., Juries, § 258. In State v. Sitts, 71 S.D. 494, 26 N.W.2d 187, 190, this court said: " 'The waiver of a challenge exhausts that challenge the same as though it had been used.' " While the Sitts case was concerned with peremptory challenges in a criminal prosecution, the statute there pertinent, SDC 34.3622, is similar to the statutes here considered in that it required the challenges to be exercised alternately. It follows that the defendant was attempting to exercise a fourth challenge—one more than allowed him by law.

Instructions XV and XXII informed the jury as to the law concerning the assured clear distance rule. Defendant did not question the correctness of these instructions, but excepted only on the ground that they did not embody the rule in its entirety and requested that his instructions 6 and 7, embodying the rule in its entirety, be given. These re-

quests were refused. We have examined the instructions given and those refused. We think the instructions given adequately stated the law concerning the assured clear distance rule as applicable to the facts in this case.

The court over defendant's exception instructed the jury concerning the duty of a person confronted with sudden danger or emergency. Defendant excepted on the ground that the emergency was created by plaintiff's negligent conduct. The general rule applicable in situations of sudden emergency was stated by this court in Zeller v. Pikovsky, 66 S.D. 71, 278 N.W. 174. In Stacey v. Patzloff, 67 S.D. 503, 295 N.W. 287, it was specifically held that the benefit of the rule is not available to a driver whose negligence caused the emergency. See also Iverson v. Knorr, 68 S.D. 23, 298 N.W. 28. Plaintiff admitted that before he saw defendant's car he was outdriving his headlights which were then on low beam. It is conceded that after he saw it he could not stop his car in the remaining distance. Since his admitted negligence contributed to the creation of the emergency he is not entitled to the protection of the rule. It is elementary that an instruction respecting sudden emergency should be given only in those cases where it is applicable. It was improper to give it under the facts in this case. The rule is intended to benefit only those whose conduct did not cause or contribute to the creation of the emergency. Prauss v. Adamski, 195 Or. 1, 244 P.2d 598. We think this error was prejudicial to the defendant.

The judgment appealed from is reversed.

All the Judges concur.